FORT HOWARD PAPER COMPANY,
Plaintiff–Appellee, Cross–Appellant,

v.

STANDARD HAVENS, INC. and Continental Casualty Company,
Defendants–Appellants, Cross–Appellees.

Nos. 89–1638, 89–1691.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1989.

Decided April 20, 1990.

Rehearing and Rehearing En Banc
Denied May 24, 1990.

Chris J. Trebatoski, Michael E. Husmann, K. Thor Lundgren, Tony L. Bonney, Michael, Best & Friedrich, Milwaukee, Wis., for plaintiff-appellee, cross-appellant.

Kathryn M. Coates, Charles A. Grube, Michael S. McCauley, Quarles & Brady, Milwaukee, Wis., Byron J. Beck, Stanley A. Reigel, Brian E. Gardner, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., for defendants-appellants, cross-appellees.

Before BAUER, Chief Judge, FLAUM and MANION, Circuit Judges.

FLAUM, Circuit Judge.

The Fort Howard Paper Company and Standard Havens, Inc., entered into a contract in which Standard Havens agreed to design, build, and install a baghouse filtration system for Fort Howard. After installation, Fort Howard was dissatisfied with the operation of the baghouse and sued Standard Havens for breach of warranty. At trial, the jury found Standard Havens had breached its warranty but also that Fort Howard misused the baghouse and was not entitled to any damages. The trial judge, sitting in diversity, refused to enter a verdict and instead granted Fort Howard's motion for a new trial determining that the defense of misuse was not properly pleaded and, therefore, was not an element of the suit. 119 F.R.D. 397. A second trial was held and the jury returned a verdict in favor of Fort Howard. Standard Havens appeals the grant of the motion for a new trial as well as alleged errors in the second trial.

I.

The Fort Howard Paper Company ("Fort Howard") is a Wisconsin corporation engaged in the business of manufacturing and selling paper products. Its principal place of business is Green Bay, Wisconsin. Standard Havens, Inc., is a Missouri corporation with its principal place of business in Kansas City, Missouri. Standard Havens is engaged in the business of designing, manufacturing and selling air filtration systems. Fort Howard entered into a contract with Standard Havens, whereby Standard Havens agreed to design, construct and install a filter system, known as a baghouse, at Fort Howard's Green Bay, Wisconsin facility. The baghouse was placed in operation at the facility in May, 1984.

The function of the baghouse is to filter flue gases from Fort Howard's boilers so that the emissions will comply with Wisconsin clean air regulations. The baghouse contains 28 modules, with each module containing 210 filter bags. Particulate matter, or fly ash, produced by the combustion of fuel in Fort Howard's boilers is filtered out and deposited on the outside of the filter bags while the boiler flue gas passes through the bags, and is then discharged into the atmosphere from a smoke stack. The build-up of fly ash on the outside of the filter bags creates a resistance to flue gas flow known as pressure drop. A high pressure drop is undesirable because the large industrial fans which drive the flue gas through the baghouse system may not be able to move the flue gas adequately, requiring more power output to run the fans, leading to higher costs.

The baghouse contract contained several express warranties, including the Pressure Drop Warranty, which limited the pressure drop to six inches of water.[1] Fort Howard was dissatisfied with the performance of the baghouse and brought an action in August of 1985, seeking damages against Standard Havens for breach of the pressure drop warranty. In response to Fort Howard's allegations, Standard Havens denied that any breach had occurred, and instead, alleged that Fort Howard "failed to fulfill its obligations under the contract."

Just prior to trial, Fort Howard filed a motion in limine asserting the defenses of misuse and hindrance were not properly pleaded by Standard Havens. Oral argument on the motion was conducted the morning of the trial. The court concluded

---

1. The pressure drop warranty reads in relevant part:

[Standard Havens] warrants that the equipment as supplied and erected shall cause a static pressure drop of no greater value than 6 inches water column with two (2) modules in the cleaning mode, measured in the process gas flow at the outlet flange with a reference point in the process gas flow at the inlet flange, when the equipment is operated at or below maximum design conditions ... This warranty is in effect for a period of twelve (12) months from the date the Equipment passes the emission test, as referenced in Paragraph 3 of the Emission Warranty. [Fort Howard] will be required to maintain reasonable operating and maintenance records to verify boiler operations, baghouse operation, and bag failure data. [Standard Havens] has the right to be notified of a testing schedule one week prior to actual testing, to be present during testing, and to review test data.

that the dispute did not lend itself to an easy resolution from the bench and took the motion under advisement and proceeded with trial. At trial, the court allowed Standard Havens to introduce evidence that substances other than those provided for in the contract were burned in Fort Howard's boilers. After a three week trial, the jury returned a thirteen-question special verdict, which contained four questions on the issues of misuse and hindrance, finding that: 1) Standard Havens had breached the pressure drop warranty; 2) but that Fort Howard had misused the baghouse causing the pressure drop problem, thereby negating any claim to damages.

The trial court refused to enter judgment for Standard Havens on the jury verdict and ordered a new trial. The court stated:

Standard Havens' defenses of misuse and hindrance to Fort Howard's breach of warranty claim were not properly pleaded. Furthermore, they were not added to the case through a proper amendment of the pleadings. Accordingly, the misuse and hindrance defenses were improperly placed before the jury. The Court hereby GRANTS Fort Howard's motion for a new trial. The new trial will not include any issues not properly pleaded.

After the trial court's order of a new trial, Fort Howard and Standard Havens conditionally stipulated that Standard Havens could amend its Answer to include the misuse and hindrance defenses. Pursuant to the stipulation, Standard Havens filed a motion to amend its Answer. The trial court denied the motion and issued orders that no evidence relating to misuse or hindrance be admitted at the second trial. Thereafter, the second trial was conducted without these defenses, and the jury returned a verdict in favor of Fort Howard finding a breach of the pressure drop warranty and damages of $955,162.

In January, 1989, Fort Howard filed a motion to amend the judgment to include an award of prejudgment interest. The district court, finding that the measure of damages was not readily ascertainable, denied the motion. Fort Howard cross-ap-

peals this ruling. Standard Havens appeals the trial court's refusal to enter judgment after the first trial and, in the alternative, for errors allegedly made by the court in the second trial. For the reasons stated below, we affirm.

## II.

Standard Havens alleges that the trial court erred in refusing to enter judgment on the verdict following the first trial on the grounds that Fort Howard knew from the outset of the action that its defenses were based on Fort Howard's failure to perform its obligations under the contract and this was sufficient to notify them of misuse and hindrance. Correspondingly, it contends that the failure to use the particular words "hindrance" and "misuse" in its Answer is not fatal because Fort Howard had proper notice.

Standard Havens asks this Court to construe the pleadings liberally. In this respect, Standard Havens argues that we should examine the pleadings to determine whether Fort Howard had notice of the defenses and not whether precise words were used. Standard Havens claims Fort Howard was on notice of "misuse" and "hindrance" because it alleged in its Answer that "Fort Howard has failed to perform obligations imposed upon it under the contract" listing various general obligations, including but not limited to, operation of the equipment in accordance with Standard Havens instructions, sufficient maintenance of the equipment, operation under conditions stated in the specifications, and notification to Standard Havens of testing.

Fort Howard, on the other hand, argues that because it received no notice from the pleadings of the misuse defense, it was deprived of any opportunity to prepare to meet these claims at trial. If it in fact knew it was defending a claim of misuse, Fort Howard asserts, it would have conducted discovery and retained experts for that claim. Therefore, allowing Standard Havens to raise these defenses denied it a fair trial.

We have determined that "appellate review of the grant of a new trial order ... is exceedingly limited because of the broad discretion that trial judges possess in this area.... Only upon a clear showing that a trial judge abused this broad discretion may an appellate court overturn a new trial order." *Juneau Square Corp. v. First Wisconsin National Bank,* 624 F.2d 798, 806 (7th Cir.1980) (citations omitted). "An abuse of discretion occurs only when no reasonable person could take the view adopted by the lower court." *Nanetti v. University of Illinois at Chicago,* 867 F.2d 990, 995 (7th Cir.1989). Therefore, in reviewing the new trial order, we do not seek to substitute our judgment for the trial judge's decision that a new trial was appropriate. "We seek only to determine whether he abused his discretion." *Juneau,* 624 F.2d at 806.

Difficulties arose in this case when Fort Howard's motion concerning the admission of evidence of misuse and hindrance was not ruled upon at the outset. Further problems developed because of the unstated reason for allowing a special verdict containing questions of misuse and hindrance to go to the jury. The absence of the decision on the motion prior to trial, or at least prior to the special verdict questions going to the jury, caused additional costs in the first trial and ultimately necessitated the second trial.

■ Nevertheless, not having addressed the issue earlier, the court correctly resolved the matter by granting a new trial. The court granted a new trial primarily because it determined that allegations that a party failed to perform "obligations imposed upon it under the contract" does not provide fair notice of hindrance. Likewise, the court determined, after reviewing the case law, that a misuse defense does not necessarily arise from a party's failure to perform contractual obligations. Accordingly, the district court concluded misuse and hindrance were not properly pleaded in the case. We agree with this analysis.

■ The evidence necessary to establish a breach of warranty claim is significantly different from that required to prove the misuse of the baghouse or hindrance of the contract. Misuse concerns whether the breach of warranty was the proximate cause of the damages. *See Burrus v. Itek Corp.,* 46 Ill.App.3d 350, 4 Ill. Dec. 793, 360 N.E.2d 1168 (1977). Hindrance concerns Fort Howard's impairment of Standard Havens' ability to perform its part of the contract. *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 453 (7th Cir.1982). As such, the alleged defenses do not controvert Fort Howard's proof of breach of warranty and, therefore, are properly labelled affirmative defenses. *See J. Moore,* Moore's Federal Practice ¶ 8.27[3] (2nd Ed.1985). Affirmative defenses must be pleaded, as the district court recognized, in accordance with Rule 8(c) of the Federal Rules of Civil Procedure.

The primary purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that a party is prepared to properly litigate it. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453–54, 28 L.Ed.2d 788 (1971). Therefore, as relevant to this case, "[t]he policy behind Rule 8(c) is to put plaintiff on notice well in advance of trial that defendant intends to present a defense...." *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 458 (10th Cir.1982). *See also Allied Concrete, Inc. v. N.L.R.B.,* 607 F.2d 827 (9th Cir.1979). We conclude, as did the trial court, that Standard Havens' Answer fails to meet these notice requirements. The Answer merely stated generally that Fort Howard "failed to fulfill its obligations under the Contract" and then listed several contractual obligations. Such a general statement of obligations is not sufficient under Rule 8(c) to give Fort Howard fair notice of the defenses of misuse and hindrance. Therefore, the district court did not abuse its discretion in concluding that the pleadings did not adequately give notice of the defenses.

■ Recognizing its tenuous position concerning notice from the pleadings, Standard Havens asserts that even if its An-

**1378**

swer isn't sufficient, Fort Howard's pretrial conduct is sufficient to establish that it had notice of the misuse defense.[2] Specifically, Standard Havens claims that based on the alleged knowledge acquired by Fort Howard through discovery, our decision in *Sundstrand Corp. v. Standard Kollsman Industries, Inc.*, 488 F.2d 807, 811 (7th Cir.1973), requires that we rule in its favor. In *Sundstrand*, we held that "[c]ourts have often looked beyond the pleadings to the pretrial conduct and communications of the parties.... The fruits of discovery, in particular, provide a wealth of information relevant to discovering the breadth of a complaint." *Id.* Standard Havens cites as further support for its position *Hassan v. United States Postal Service*, 842 F.2d 260 (11th Cir.1988), where it was determined that when a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice, and it is not error for the trial court to hear evidence on the issue. Relying on these cases, Standard Havens concludes the discovery in this case was sufficient to give Fort Howard notice that misuse was a defense in the action.[3]

The obscure references cited by Standard Havens, however, are pulled from vast quantities of discovery. They are extracted from inquires that did not focus solely on the alleged defenses, but instead touched many different aspects of the litigation. For example, Standard Havens' response concerning its expert fails to point out that this statement is buried in a lengthy reply that begins, "Mr. Budrow is expected to testify that the pressure drop and bag failure problems experienced by plaintiff are the result of plaintiff's failure to operate the boilers and baghouse in accordance with the provisions of the contract," an introduction this Court reads as no more specific than Standard Havens' Answer. It does not serve to notify Fort Howard that Standard Havens' expert was designated to testify regarding any misuse of the baghouse. In our view, the district court did not abuse its discretion in concluding that these items of discovery did not serve to put Fort Howard on notice.

Our holding is consistent with *Sundstrand* and *Hassan*. Conduct can be proof of notice, but this case does not rise to the level of notice in those cases. In *Sundstrand* the plaintiff's complaint specifically alleged fraud by the defendant. This Court held that in view of the specific notice of the central claim in the complaint and based on the interrogatories taken by the defendant, the defendant was made aware early on that other fraudulent conduct, besides that detailed in the complaint, was also a subject of the suit. In *Hassan*, the district court noted there was extensive discovery on the defense not pleaded, which served to put the party on notice of the defense. Here, the district court found that Fort Howard had no knowledge of *any* claim of misuse and the general statement of defense was not sufficient. Additionally, Standard Havens reliance on vague references in lengthy depositions is also not sufficient to give notice. *See Samuels v. Wilder*, 871 F.2d 1346, 1350 (7th Cir.1989). The trial judge concluded that this highlighted discovery did not "touch exclusively on the issues of hindrance and misuse," and, therefore, did not

---

**2.** Standard Havens does not assert on appeal that the pretrial conduct of Fort Howard established notice on its hindrance defense.

**3.** Standard Havens identifies, as the first item of discovery that conveys knowledge of the defense, its response to Fort Howard's inquiry regarding what one of its experts would testify about at trial. In its response, Standard Havens noted that its expert would testify that among other causes of the baghouse problem were the "attempted combustion of substances, including 'chemicals', oil, microfilm and ink, not permitted by the contract ..."

As further evidence of Fort Howard's knowledge, Standard Havens highlights questions asked by Fort Howard's attorney at depositions and Fort Howard's engagement letter to Babcock & Wilcox, an outside consulting group, to opine in a report as to whether Fort Howard operated its facility "in accordance with the boiler suppliers' written instructions and manuals." Standard Havens' claims the addition of this discovery to the response concerning its expert demonstrates Fort Howard's awareness of the misuse defense.

reach as far as the notice in *Sundstrand* or *Hassan.* Under such circumstances, it was reasonable for the district court to conclude that the notice of a general defense did not provide the level of the notice acquired in *Sundstrand* or *Hassan.* Our review of the record confirms these conclusions. Therefore, we conclude, the discovery undertaken by Fort Howard did not provide it with notice to sufficiently prepare for litigation on the issue of misuse.

█ For all the above reasons, we determine the trial judge did not abuse his discretion in granting a new trial. After presiding over two years of discovery, all pretrial proceedings and a three-week jury trial, the trial court determined that the court and Fort Howard were not aware that the defenses of misuse and hinderance were part of the case. Accordingly, the trial judge, sitting at a much better vantage point than this Court, determined that the interests of justice required a new trial.

### III.

█ Standard Havens' next claim on appeal concerns the district court's refusal to allow the post-trial amendment of Standard Havens' Answer to include the defenses of misuse and hindrance for the second trial. In support of its argument, Standard Havens notes that the parties filed a written stipulation agreeing to the amendment and that under FRCP 15(a), a party may amend its pleading "by written consent of the adverse party." When consent is given by the adverse party, Standard Havens argues, "[t]he pleader's right to amend is not subject to the court's discretion and the court must permit the amendment to be filed." Wright & Miller, *Federal Practice & Procedure:* Civil § 1490 (1989). Standard Havens urges this Court to adopt this position and find that the trial court committed clear error. *See Fern v. United States,* 213 F.2d 674, 677 (9th Cir.1954) (pleaders right to amend after consent of an adverse party is not subject to the discretion of the court). We find, however, that when consent to an amendment is conditioned on further action and discretion by the district court, we need not consider

if the district court has the discretion to review an unconditional consent to amend. This is such a case. The parties stipulation was subject to the reopening of discovery and such a conditional stipulation is clearly within a court's discretion.

Courts have consistently held that leave to amend should be "given when justice so requires[,]" *Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180, 1184 (7th Cir.1986); *City of Columbia v. Paul N. Howard Co.,* 707 F.2d 338 (8th Cir.1983); *Joseph v. United States Civil Service Commission,* 554 F.2d 1140, 1147 (D.C.Cir.1977); *Hilgeman v. National Ins. Co. of America,* 547 F.2d 298, 303 (5th Cir.1977), and that the leave sought should be freely given. *Knapp v. Whitaker,* 757 F.2d 827, 849 (7th Cir.1985). Nevertheless, as we stated in *Feldman v. Allegheny Intern, Inc.,* 850 F.2d 1217, 1225 (7th Cir.1988), FRCP 15(a) "is not a license for carelessness or gamesmanship. Parties to litigation have an interest in speedy resolution of their disputes without undue expense. Substantive amendments to the [Answer] just before trial are not to be countenanced and only serve to defeat these interests. The district court must consider the harm when deciding whether to grant leave." The judicial system cannot allow parties to freely void orders by their agreement.

█ It is wholly within a district court's discretion to deny an amendment to the pleadings for delay and prejudice to the opposing party. *Bohen,* 799 F.2d at 1185; *Knapp,* 757 F.2d at 849. In the parties conditional stipulation they agreed to allow the amendment only if Fort Howard was permitted new discovery on the defenses. Apparently, the district court was concerned that if it had allowed the addition of the new defenses of misuse and hindrance the parties would be forced to reopen discovery, including the gathering of new evidence, and the identification of appropriate legal arguments. All this would have taken time if the parties were to have an opportunity for meaningful trial preparation, which would result in additional expenditures by the parties. *See Feldman,* 850 F.2d at 1225.

■ Beyond prejudice to the parties, a trial court can deny amendment when concerned with the costs that protracted litigation places on the courts. Delay impairs the "public interest in the prompt resolution of legal disputes. The interests of justice go beyond the interests of the parties to the particular suit; ... delay in resolving a suit may harm other litigants by making them wait longer in the court queue. Hence, when extreme, 'delay itself may be considered prejudicial'." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir.1988) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 139 (1st Cir.1985)). The judicial system would be endlessly burdened if the parties could merely amend their pleadings after an order granting a new trial, thereby, delaying every other matter before the court indefinitely.[4] In view of this delay and prejudice, the district judge determined "[t]he joint motion (stipulation) for leave to amend the pleadings and its accompanying scheduling order essentially seek to start the lawsuit anew ... [and] the Court has no intention of starting this case again on the basis of errors made at trial. The time for amending pleadings has passed. The time for conducting discovery has passed. The time for filing dispositive motions has passed. A grant of an order for a new trial simply does not mean starting the case from square one." Accordingly, the judge denied the conditional stipulation to amend.

■ Review of a district court's decision not to permit an amendment is under the abuse of discretion standard. *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 204 (7th Cir.1985). In reviewing the district court's decision, we note the judge's distress over the history of this case and its hardships on the legal system. The district judge noted,

"[t]he history of this case has become a long one. The Court's file now fills more than two drawers. In reviewing these materials in preparation for today's meeting, the Court was once again struck by the fact that the parties have expended a tremendous amount of time and money, including that associated with the first trial, only to arrive at the point at which they were before the first pleading was filed. That is, they are in dispute as to what issues are actually in dispute. Here we are more than three years and one mistrial after the date of the filing of the complaint and the parties still cannot agree on the issues of the case. Now, there may be few people who will shed tears over the fact that two corporations have spent a good deal of money spinning their wheels in federal court. But there are other considerations as well. These corporations will obviously pass the cost of this litigation on to their customers. Also, this case has filled a great deal of the Court's calendar and has caused other cases to be moved, another burden to the general public. I suppose the Court shares some of the blame for this waste of resources. But I feel counsel must shoulder some burden as well.

As I reviewed the submissions of defendants—those dealing with the issues of today's proceedings as well as those dealing with preceding matters—I am struck by the uncertainty of the manner in which [counsel has] presented legal defenses for [the] case. From almost the start of the case, [Standard Havens] position was no more detailed than the following: 'Plaintiff did something wrong, therefore we are not responsible for a breach of warranty.' That may very well serve as a factual basis for certain legal defenses, but there comes a time when you must identify the factual and legal support for such a position. We cannot just proceed to trial without specific identification as to what these legal defenses are. At some point prior to trial you must lay your cards on the

---

4. A motion for a new trial brought under "Rule 59(a) is not merely intended to secure a forum for the relitigation of old matters or to afford the parties the opportunity to present the case under new theories; instead, the motion is a device properly used to correct manifest errors of law or fact or to present newly discovered evidence." *Rosera v. International Harvester Co.*, 109 F.R.D. 143, 148–49 (E.D.Wis.1986).

table so that the legal sufficiency of your arguments may be tested. Civil trials are not places for surprises—legal or factual. Moreover, you may not go to trial simply to determine if plaintiff did something bad. Whatever wrong may be proved must serve as a legal defense.

\*    \*    \*    \*    \*    \*

Well, nothing is going to change what has already transpired. This case is scheduled for retrial and the Court today will decide, on the basis of the parties' submissions, exactly what issues are to be tried."

The trial judge's distress with the actions of counsel was quite evident. Such delay and prejudice is a reasonable basis for a court to deny a motion to amend. "Whether it results from bad faith or mere absent-mindedness, a district judge may act to deter such artificial protraction of litigation, and its costs to all concerned by denying the amendment." *Feldman*, 850 F.2d at 1226 (citing *Zenith Radio Corp. v. Hazeltime Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971)).

Based on the trial judge's concerns over delay and prejudice, we are confident in concluding that the trial judge did not abuse his discretion in denying the amendment. The judge was troubled with the waste of a three week trial, the waste of seven jurors' time, a delay in the conclusion of the litigation, a delay in the resolution of other matters pending before the court, increased expenses to all parties, and the inability of counsel to proceed with the litigation. Accordingly, the amendment was properly rejected.

### IV.

We now turn our attention to the alleged errors in the second trial. Standard Havens has two main contentions in this regard: the trial court should have allowed into court parol evidence concerning the contract, and it should have granted a judgment notwithstanding the verdict for Standard Havens at the second trial.

▇▇ Turning to the first claim, Standard Havens asserts the trial court erred in not allowing it to present parol evidence concerning "when" the pressure drop warranty had to be met for the warranty to be effective. The pressure drop warranty states that the warranty is effective *"when the Equipment is operated at or below maximum design conditions ... for a period of twelve (12) months."* (emphasis added). Standard Havens argues parol evidence must be admitted to determine whether the warranty was void in this case.

▇▇ In order to establish reversible error in an evidentiary ruling, Standard Havens must show that the ruling was a clear abuse of the district court's discretion. *Prudential Ins. Co. v. Miller Brewing Co.*, 789 F.2d 1269, 1279 (7th Cir.1986). The controlling law for this issue is the common law parol evidence rule, which is codified at Wis.Stat. 402.202. Section 402.202 enunciates an absolute bar to the admission of parol evidence of any type which contradicts express terms of a written contract. *Milwaukee Valve Co. v. Mishawaka Brass Mfg.*, 107 Wis.2d 164, 319 N.W.2d 885 (1982); *Lakeside Bridge & Steel Co. v. Mountain State Const. Co., Inc.*, 400 F.Supp. 273, 277–78 (E.D.Wis.1975). The evidence Standard Havens seeks to present was determined by the district court to be contradictory to an unambiguous contract and therefore not allowed under the parol evidence rule.

An exception to the common law parol evidence rule, however, is created by § 402.202(1). This section provides that terms of a contract may be further explained or supplemented, but not contradicted, by specific types of parol evidence. Included in this exception is evidence of course of dealing, usage of trade, or course of performance.

The district court found, and the record supports, that the parol evidence Standard Havens wishes to submit does not comport with the exceptions to § 402.202. Standard Havens' evidence does not concern course of dealing, since the parties are dealing for their first time. It does not concern usage of trade, since there is no evidence that this warranty is a standard trade practice. And it does not concern course of performance

since the parties dispute the meaning of the warranty and, therefore, nothing can be learned from their performance of the contract. The evidence was properly excluded by the trial court.

■ Standard Havens' final assertion is that it was error for the trial court to deny its motion for judgment notwithstanding the verdict at the second trial because Fort Howard failed to meet its burden of proof in establishing the breach of warranty. In diversity cases, state law governs the standard of review of a denial of a motion for judgment notwithstanding the verdict. *Twin Disc, Inc. v. Big Bud Tractor,* 772 F.2d 1329, 1336 (7th Cir.1985); *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.,* 695 F.2d 281 (7th Cir.1982). The Wisconsin standard applicable to this case is codified at Wis.Stat. § 805.14(1), which provides in relevant part that:

> [n]o motion challenging the sufficiency of the evidence as a maker of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to

the party against whom the motion is made, *there is no credible evidence* to sustain a finding in favor of such party. (emphasis added).

■ This Court reviews a district court's denial of a motion for judgment notwithstanding a verdict *de novo. Siddiqi v. Leak,* 880 F.2d 904, 908 (7th Cir.1989). In such a review, we must determine whether there is sufficient evidence to support the jury's verdict. "This court will not reweigh or reevaluate the evidence—that task is reserved to the jury as factfinder." *Id.* at 908. Fort Howard presented several documents in support of its claim as well as a report by an independent third party testing the baghouse. There was also testimony by witnesses supporting Fort Howard's position. Our review of the record leads us to conclude that there was evidence to support the jury verdict. We, therefore, affirm the district court's denial of Standard Haven's motion for judgment notwithstanding the verdict. The district judge applied this test and determined that the judgment was supported by credible evidence. We agree with this result.[5]

---

5. Standard Havens alleges several evidentiary errors were made by the trial court. These issues are minor and need not be discussed in great length. We will, however, address each claim individually.

Standard Havens appeals the district court's conclusion that section I.2 of the contract did not contain covenants imposing duties on Fort Howard, but rather were specification requirements that Standard Havens had to meet. We agree with the district court's interpretation. Section I.2 of the contract is entitled "Application and Sizing". This section, as the district court found, is merely a list of specifications Standard Havens' baghouse had to satisfy. Nowhere in section I.2 is there language of promise to bind Fort Howard.

Standard Havens also claims it was error for the district court not to allow evidence concerning Fort Howard's operation of its boilers into court. Once again, however, this is merely an attempt by Standard Havens to introduce evidence of misuse into the trial. The district court correctly ruled that this evidence was contrary to its earlier order concerning the defense of misuse, and as such, was inadmissible. We find this was not an abuse of discretion and agree with the district court's decision.

Standard Havens' next attempt to demonstrate error involves the trial court's decision to admit into evidence a document prepared by

Fort Howard under the business record exception to the hearsay rule. The document at issue was entitled "Baghouse Testing" and consisted of data concerning the different levels of pressure drop experienced by Fort Howard. After hearing Standard Havens' objection, the district judge determined the document was to be admitted under Fed.Rule of Evid. § 803(6), the business record exception. The standard of review for such an evidentiary ruling is abuse of discretion. *Prudential Ins. Co.,* 789 F.2d at 1279. The district judge reached his decision after viewing the document and all relevant evidence. The judge was confident that based on all the evidence the document contained enough reliability to fall within the exception. We conclude, after viewing the record, that the judge's decision to admit the document was not an abuse of discretion.

Standard Havens' final evidentiary claim is that the district court erred in admitting several exhibits into court which also detailed Fort Howard's pressure drop readings. Standard Havens objected because Fort Howard and Standard Havens have different interpretations of how to measure pressure drop in accordance with the contract. But this was precisely why the district court admitted the exhibits. The dispute in this case centers around the pressure drop warranty. Therefore, evidence related to Fort Howard's interpretation of the correct

## V.

We now turn to Fort Howard's cross appeal. Fort Howard appeals the decision of the trial court denying prejudgment interest on the jury's damage award. In diversity cases, the allowance of prejudgment interest is governed by state law. *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir. 1985). Under Wisconsin law, prejudgment interest will be awarded where there is a reasonably certain standard of measurement by which the party who breaches a contract can ascertain what he owes. *Afram*, 772 F.2d at 1370–71. Fort Howard argues a reasonably certain standard of measurement exists under Wis.Stat. § 402.714(2). Under this statute, Wisconsin law provides that damages for breach of warranty are measured by the difference in value between the goods as warranted and the goods as delivered. This amount, Fort Howard states, was readily ascertainable by reference to the actual cost of repairing the baghouse, $955,162, which was the amount awarded by the jury.

The district court determined the appropriate measure of damages was not ascertainable. We agree. The contract at issue in this case provided for an exclusive remedy provision that was contrary to this Wisconsin damage provision. In fact, one of the very issues in this lawsuit was whether the contract provision or the statute would govern the recovery of damages. As the district court noted, "it was only because the jury found the exclusive remedy provision had failed of its essential purpose that the plaintiff was entitled to seek its costs of repair." Therefore, the district court properly noted "[w]here the dispute goes to the very method of calculating the amount owed, prejudgment interest is not appropriate." *Jones v. Jenkins*, 88 Wis.2d 712, 726, 277 N.W.2d 815, 821 (1975). The trial court's decision denying prejudgment interest is affirmed.

method to determine pressure drop is surely relevant. The trial judge appropriately admit-

## VI.

For the foregoing reasons the district court properly denied all the claims Standard Havens brings in this muddled litigation. The district court also correctly denied Fort Howard's claim for prejudgment interest. The trial court's judgment is AFFIRMED.

ted this evidence and did not abuse his discretion.