THK AMERICA, INC., Plaintiff,

v.

NSK, LTD. and NSK Corporation, Defendants.

No. 90 C 6049.

United States District Court, N.D. Illinois, Eastern Division.

March 22, 1994.

Robert Edward Wagner, James Joseph Jagoda, Alan L. Barry, Wallenstein, Wagner & Hattis, Ltd., Chicago, IL, Shahan Islam, William F. Westerman, Anderson, Kill, Olick & Oshinsky, P.C., John E. Daniel, Rogers & Wells, John E. Kidd, Walter G. Marple, Jr., Michael O'Shea, Shea & Gould, New York City, James E. Armstrong, III, Armstrong, Nikaido, Marmelstein, Kubovcik & Murray, Washington, DC, for THK America, Inc.

Daniel Michael Riess, Daniel Robert Pastirik, Thomas D. Paulius, Lockwood, Alex, Fitzgibbon & Cummings, Chicago, IL, Deborah H. Bornstein, Thomas Campbell, Richard William Young, James William Teevans, Gardner, Carton & Douglas, Chicago, IL, Charles E. Miller, Scott D. Stimpson, Pennie & Edmonds, New York City, for Nippon Seiko K.K., N.S.K. Corp.

### *ORDER*

ROSEMOND, United States Magistrate Judge.

This action was commenced on October 17, 1990 by plaintiff THK America ("THK"). In its complaint, THK charged defendants NSK, Ltd. and NSK Corporation (collectively "NSK") with infringement of two United States patents concerning linear guides with re-circulating ball bearings. These products

are primarily used in the industrial arena for the linear movement of large and heavy objects or machinery, such as industrial robots, with great precision.[1] In the period since the case was commenced, the parties have filed scores of motions and discovery requests. This order addresses the latest of these motions, a motion made by NSK on November 30, 1992, for leave to file amended answers, to join THK Co. (hereinafter "THK Japan") as a party plaintiff, and to add substantive counterclaims alleging violations of federal and state antitrust law and common law tort causes of action. *NSK's motion is denied in its entirety.*

### A. *NSK's Motion to Join THK Japan as a Necessary Party.*

■ The first component of NSK's present motion seeks joinder of THK Japan as a necessary party under Rule 19(a) of the Federal Rules of Civil Procedure. Under Rule 19(a), a party is necessary where: (1) the party's absence from the litigation will preclude the court from providing complete relief for those already parties in the action, or (2) the party claims an interest relating to the subject of the action and is situated such that the disposition of the action in the party's absence may (i) impair or impede the party's ability to protect that interest, or (ii) leave any of the existing parties subject to a substantial risk of multiple or inconsistent obligations as a result of the claimed interest.[2] Where a party meets one of these criteria, the court is required to join the party unless the court lacks jurisdiction over the party or where joinder would destroy the court's jurisdiction over the existing litigants.[3]

■ Generally, patent rights may be enforced in court only by the patent's owner or assignee.[4] However, courts have recognized that an exclusive licensee having substantial patent rights qualifies as an assignee for enforcement purposes.[5] Therefore, because the exclusive licensee has standing to sue on the patent in its own right, the patent's owner is not a necessary party under Rule 19(a). In this case, the owner (THK Japan—who has relinquished the right to sell the product in the United States to the exclusive licensee—THK America) faces no threat of having its interests compromised in the litigation, and the existing parties (*i.e.*, the exclusive licensee and the alleged infringer) are fully able to gain complete relief.[6]

THK is an exclusive licensee of the patents at issue here. While NSK has gone to great effort to recharacterize the license granted THK by THK Japan as a "mere license,"[7] the very language of the license clearly grants THK an exclusive right to "make, use and sell and otherwise practice the inventions covered by [the subject patents] and to sue others for past and future infringement thereof."[8] As the language and validity of the agreement is plain and unambiguous, we decline to accept NSK's invitation to look behind the document for any ulterior motivation that might have prompted the parties to enter into it.

Furthermore, we cannot help but note that NSK's present position on the exclusivity of the license carries a strong scent of eleventh-hour litigation delay strategy. THK alleged in its complaint that it was the exclusive licensee of the subject patents.[9] NSK raised no issue as to this fact in its answer.[10] And we do not believe that it would take two years of discovery to unearth new facts concerning the exclusivity of THK's license.

---

1. United States Patent No. 4,040,679 expires in August of 1994, and United States Patent No. 4,253,709 expires in March of 1998.

2. Fed.R.Civ.P. 19(a).

3. *Id.*

4. *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891).

5. *See, Vaupel Textilmaschinen v. Meccanica Euro Italia*, 944 F.2d 870, 875 (Fed.Cir.1991).

6. *Id. See also, Surgical Laser Technologies, Inc. v. Laser Industries, Ltd.*, 21 U.S.P.Q.2d 1593, 1991 WL 255827 (E.D.Pa.1991).

7. *See,* Def.Mem., at 15–16.

8. Pl.Exh. 3 (License Agreement).

9. Complaint ¶ 5.

10. Answer ¶ 5.

For NSK to now submit a motion devoting sixteen pages to argue the exclusivity of THK's license—a point that it conceded without the slightest hesitation at the time the suit was commenced—strikes us as an eleventh-hour afterthought. In any event, we find that THK Japan is not a necessary party in this litigation under Rule 19(a). *NSK's motion to join THK Japan is therefore denied.*

### B. NSK's Motion to Amend.

The second component of NSK's present motion involves an attempt to amend its pleadings to assert four counterclaims against THK and to raise an affirmative defense of patent misuse. As with its motion to join THK Japan, NSK claims that its discovery efforts have revealed new (unspecified) facts purportedly supporting the misuse defense and four counterclaims against THK. NSK argues that in light of the liberal amendment policy embodied in Rule 15(a), these assertions provide an ample basis for the Court to permit its proposed amendments.

THK counters that the motions should be denied as a result of NSK's delay in raising the counterclaims, the potential for prejudice by allowing amendment at this late date, the potential burden on the judicial system, and the fact that NSK's counterclaims fail to state a cause of action. In light of the background facts and history of the litigation, it is clear that THK has the better of the argument.

■ NSK seeks to amend its answer to the complaint to include counterclaims charging THK with antitrust violations and various state-law infractions. NSK's first counter-claim alleges that THK has attempted to monopolize the linear guide market in violation of Section 2 of the Sherman Antitrust Act.[11] Particularly, NSK claims that from 1988 until the time this litigation was commenced, THK and THK Japan, through their founder and president, Mr. Hiroshi Teramachi, attempted to gain NSK's participation in a plan to reduce competition in the linear guide industry by raising prices in the United States and elsewhere. NSK also alleges that THK requested that NSK withdraw from the linear guide market in return for THK's withdrawal from the ball screw market. NSK claims that THK attempted to coerce NSK's compliance with these anti-competitive schemes by threatening and commencing the present action, which NSK characterizes as "sham" litigation. *Such charges will not support an antitrust claim.*

*Evidence of anti-competitive intent or purpose—standing alone—cannot transform otherwise legitimate activity—such as the filing of a lawsuit—into "sham" litigation.*[12] Thus, even an "improperly motivated" lawsuit is not a sham unless such it is "baseless".[13]

*Litigation is not a sham unless it is "objectively baseless".* Under the *Real Estate Investors* case, a lawsuit is "objectively baseless" if no reasonable litigant could realistically expect success on the merits.[14] If an objective litigant could conclude that a lawsuit is reasonably calculated to elicit a favorable outcome, the suit is not subject to an antitrust challenge predicated on a charge of "sham" litigation.[15] Only if the challenged litigation is objectively meritless may a court examine a litigant's subjective motivation.[16] Under this second prong of the "sham" litiga-

---

11. Section 2 of the Sherman Antitrust Act punishes "[e]very person who shall monopolize, or *attempt to monopolize,* or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2 (emphasis added).

12. *See, Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* — U.S. —, —, 113 S.Ct. 1920, 1927, 123 L.Ed.2d 611 (1993) ("an objectively reasonable effort to litigate cannot be sham regardless of subjective intent."). *See also, Eastern R. Presidents Confer-*ence v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); and *Mine Workers v. Pennington,* 381 U.S. 657, 669, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965).

13. *Real Estate Investors,* — U.S. at —, 113 S.Ct. at 1927.

14. *Id.,* at —, 113 S.Ct. at 1928.

15. *Id.*

16. *Id.*

tion analysis, a district court focuses on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor."[17] This two-tiered analysis requires a plaintiff to disprove the challenged lawsuit's *legal* viability, before a court will entertain evidence of the suit's *economic* viability.[18]

THK's suit easily satisfies the first prong, precluding the Court from entertaining NSK's invitation to scrutinize THK's underlying motivations. The first prong is met because THK lawfully enjoys exclusivity rights granted to it by the patent laws of the United States.

The patent laws were enacted by Congress pursuant to Article I, Section 8 of the United States Constitution:

> The Congress shall have Power ... To promote the Progress of Science and useful Arts, by securing limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries ...[19]

Congress gave inventors the right to obtain patents on their inventions and thereby gain the right to exclude others from making, using or selling the invention, without the consent of the patent owner, for a period of seventeen years.[20] *And Congress specifically granted patent owners the right to commence a civil suit in order to protect their inventions.*[21]

Accordingly, regardless of whether THK intended any monopolistic or predatory purpose in filing suit, THK has statutory patent rights which it may protect in American courts.[22] Moreover, as patents are cloaked in a presumption of validity, a patent infringement suit is presumed to be brought in good faith.[23]

Probable cause to institute this patent infringement suit requires no more than a reasonable belief on the part of THK that there is a chance that its claims may be held valid upon adjudication.[24] The patent laws of the United States grant THK the right to sue, and the presumption of the validity of patents provides THK with a reasonable expectation that its patent infringement claims may be held valid upon adjudication. That THK has an objectively reasonable expectation of success on the merits is further evidenced by the Magistrate Judge's February 1st, 1993 *Order* denying NSK's summary judgment motion on the issue of non-infringement.[25] Accordingly, since NSK's federal antitrust counterclaim appears not to state a claim upon which relief may be had, all the more reason exists for precluding its introduction into this case.

The same considerations apply to NSK's second counterclaim, which realleges the same facts as a violation of § 3(3) of the Illinois Antitrust Act.[26] Therefore, like the federal antitrust counterclaim, NSK's state antitrust counterclaim would be subject to dismissal under Rule 12(b)(6), and should not be introduced into this litigation.

**17.** *Real Estate Investors*, at ——, 113 S.Ct. at 1928, *quoting, Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S.Ct. 523, 533, 5 L.Ed.2d 464 (1961).

**18.** *Real Estate Investors*, —— U.S. at ——, 113 S.Ct. at 1928.

**19.** U.S. Const. Art. I, § 8.

**20.** 35 U.S.C. § 154.

**21.** 35 U.S.C. § 281.

**22.** *Real Estate Investors*, at ——, 113 S.Ct. at 1930.

**23.** *See, Handguards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996, 202 USPQ 342, 351 (9th Cir. 1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980).

**24.** *Real Estate Investors*, —— U.S. at ——, 113 S.Ct. at 1912.

**25.** At the January 19th, 1993 oral argument on NSK's summary judgment motion, THK articulated numerous issues of fact which must be determined in order for the Court to decide whether or not infringement exists. The Court concurred in THK's assessment. Moreover, because the plain language of the patent claims, themselves, is subject to several interpretations, perforce expert testimony is needed to determine how one skilled in the art would read the claims.

**26.** Ill.Rev.Stat.1981 ch. 38 par. 60–3. *See, Ray Dancer, Inc. v. DMC Corp.*, 230 Ill.App.3d 40, 54,

■ NSK's third and fourth counterclaims allege that THK committed two common law torts under Illinois law. The third counterclaim alleges that THK committed the torts of commercial disparagement and unfair trade practices by disseminating false information about NSK's products.[27] The fourth alleges intentional interference with business relations.[28] Like the antitrust claims, THK claims that these counterclaims as pled could not withstand a motion to dismiss under Rule 12(b)(6). The Court agrees that NSK's skeletal allegations would wither under the scrutiny of a Rule 12(b)(6) motion. However, rather than dwell on the prospective merit of the common law claims, the Court turns to the heart of this dispute, *to-wit:* whether NSK should be foreclosed from amending its pleadings in light of its two-year delay.[29]

NSK has noted correctly that amendments to pleadings are liberally allowed under the Federal Rules of Civil Procedure.[30] However, the general rule in favor of liberal amendment has been somewhat tempered:

> FRCP 15(a) is not a license for carelessness or gamesmanship. Parties to litigation have an interest in speedy resolution of their disputes without undue expense. Substantive amendments to the [Answer] just before trial are not to be countenanced and only serve to defeat these interests.[31]

Generally, courts will deny leave to amend only where the party seeking leave is guilty of bad faith, dilatory motive, or undue delay.[32] The Seventh Circuit has explained that Rule 15(a) analysis must take into account the prejudice to the opposing party, the burdens on the judicial system, and the extent of the delay.[33] *All of the factors to be considered weigh in favor of THK.* These factors, coupled with the apparent lack of merit of NSK's counterclaims as pled, as well as the lack of a common factual predicate for the counterclaims *and* the claims and defenses in the patent infringement suit, compel denial of NSK's motion to amend.

NSK's motion to amend was filed on November 30, 1992. By this time, the litigation was already well over two years old.[34] At present, except for certain outstanding discovery motions still under advisement, fact discovery is closed, and the parties are nearly finished with expert discovery. The case is now very close to trial.

Granting NSK's motion to amend would result in considerable prejudice to THK:

> Prejudice in the context of Fed.R.Civ.P. 15(a) "means undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the other party." [35]

Adding NSK's proposed counterclaims will raise entirely new issues of law. In turn, plaintiff will necessarily advance new defenses not previously raised in this litigation. That new discovery would be required is evident from NSK's numerous attempts throughout the discovery phase of this litigation to delve into matters related to its proposed counterclaim amendments, but unrelated to the pending patent infringement action.[36] Additionally, if leave of court is

---

171 Ill.Dec. 824, 834, 594 N.E.2d 1344, 1354 (2d Dist.1992).

**27.** Counterclaim ¶¶ 47–50.

**28.** Counterclaim ¶¶ 51–6.

**29.** We do not decide whether any of NSK's four proposed counterclaims are compulsory or not. For purposes of NSK's motion, we assume that they are so.

**30.** *See,* Fed.R.Civ.P. 15(a) (leave to amend pleadings shall be granted freely where justice requires); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

**31.** *Fort Howard Paper Co. v. Standard Havens,* 901 F.2d 1373, at 1379 (7th Cir.1990) (quoting,

*Feldman v. Alleghany Intern, Inc.,* 850 F.2d 1217, 1225 (7th Cir.1988)).

**32.** *Foman,* 371 U.S. at 182, 83 S.Ct. at 230.

**33.** *Fort Howard Paper,* 901 F.2d at 1379–80.

**34.** THK's patent infringement action was filed on October 17, 1990.

**35.** *Tarkett, Inc. v. Congoleum Corp.,* 144 F.R.D. 289, 291 (E.D.Pa.1992), *quoting, Deakyne v. Commissioners of Lewes,* 416 F.2d 290, 300 (3d Cir. 1969).

**36.** *See, e.g.,* the Magistrate Judge's February 9, 1993 *Minute Order* sustaining THK's objections to certain deposition questions put to a THK deponent "on the ground, among others, that the line of inquiry related to counterclaims not yet permitted by the District Court to be filed."

granted to NSK to file its proposed counterclaims, concurrent with that filing, NSK will serve upon THK *"Counterplaintiffs' Requests (1–40) To THK America, Inc. For Production Of Documents And Things"* containing 40 document requests.[37]

As reflected by the Magistrate Judge's June 30, 1993 *Order* regarding deposition discovery, the patent infringement action has already been unbearably long and tedious and extremely expensive for the parties. The June 30th *Order* essentially concerned the deposition discovery phase of the litigation. NSK had noticed nineteen depositions. The identity of all of the noticed deponents was obtained by NSK from THK answers to NSK interrogatories *submitted by THK to NSK in 1991*. Even with such knowledge, by June 30, 1993, NSK had only deposed two of the individuals identified in THK's interrogatory answers. After a discovery conference in open-court, the Magistrate Judge issued the June 30th *Order* which reduced the proposed nineteen depositions to seven. Over NSK's objections, the Magistrate Judge also set a discovery cut-off date for fact discovery. Issuance of the June 30th *Order* was necessary because "NSK ha[d] not utilized its time well"[38], thereby necessitating judicial intervention to add momentum to the discovery process. Permitting NSK's counterclaims would launch the parties upon another waive of discovery of unknown duration and destination.

As we have noted in a number of orders, virtually all of the relevant documents produced in discovery are in Japanese and are required to be translated into English for American counsel. The translations take considerable time. In addition, virtually all of the key depositions are in Japanese. Most have been taken in Japan. For these depositions, a triumvirate of translators is used consisting of a translator for each party and a third translator agreed upon by both parties. Translation disputes are resolved by a majority of the triumvirate. Thus, depositions are considerably longer than normal and far more expensive.

Finally, the propensity of NSK to file overbroad discovery requests has resulted in a plethora of discovery motions being filed—which have "bogged down" the Court. NSK has won some, but lost most. And, even with respect to its few victories, the discovery sought was substantially narrowed by the Court. In any event, resolution of the motions consumed considerable judicial time. To permit the filing of NSK's proposed counterclaims would clearly unduly delay and complicate this case, and prejudice THK by imposing additional expensive and time-consuming new discovery.[39]

The 40 document requests which NSK seeks to serve upon THK concurrent with the filing of its proposed amended answer and counterclaims would bring the progress of this patent infringement litigation to a virtual stand-still. For example, Document Request No. 21 reads as follows:

*Request 21.*

All documents identifying or relating to patent applications, including the patent applications themselves (domestic or foreign) assigned to THK or Teramachi which relate to linear guides.[40]

Allegedly, "THK holds over 200 patents in Japan, the United States and elsewhere in the world, and has applied for over 400 additional patents."[41] Document production for between 200 and 400 patent applications

---

**37.** Exhibit 7, *"Exhibits To Plaintiff's Memorandum In Opposition To Defendants' Motion For Leave To File Answers, To Join THK Co., Ltd. As A Party Plaintiff, And To Add Counterclaims."*

**38.** Magistrate Judge's June 30, 1993 *Minute Order*, at 3 n. 2.

**39.** *Stoller v. Curtis Homes, Inc.*, No. 86 C 7817, 1988 WL 31501, 1988 U.S.Dist. LEXIS 2637 (March 29, 1988, Williams, J.) [citations omitted].

**40.** *"Counterplaintiffs' Request (1–40) To THK America, Inc. For Production Of Documents And Things,"* at 13, attached as Exhibit 7 to, *"Exhibits To Plaintiff's Memorandum In Opposition To Defendants' Motion For Leave To File Answers, To Join THK Co., Ltd. As A Party Plaintiff, And To Add Counterclaims."*

**41.** *Counterclaim ¶ 16, attached as Exhibit 3 to, "Memorandum In Support Of Defendants' Motion For Leave To File Amended Answers; To Join THK Co., As A Party Plaintiff; And To Add Counterclaims."*

would bring the patent infringement action which is close to trial to a virtual stand-still.

Document requests similar to the above-quoted request were propounded by NSK to THK in the paper discovery phase of the patent litigation, but they were never allowed. They were always narrowed in scope to the patents at issue, *to-wit:* United States Patent No. 4,040,679 and United States Patent No. 4,253,709.[42] NSK makes no such effort with respect to proposed Document Request No. 21.

Perforce, NSK's counterclaim amendments would result in considerable delay in the final disposition of the patent infringement action. While delay itself can be prejudicial,[43] the delay in this case would have palpable and harmful effects on THK. As noted previously, one of the subject patents will expire in August of 1994. The other will expire in March of 1998. THK clearly has a compelling interest in obtaining the quickest possible resolution of its patent claims. Courts have found that even where money damages for lost royalties are available, infringement results in substantial harm.[44] The subject amendments, by requiring additional discovery, pleading, and briefing, will clearly delay resolution of this case, and have an adverse effect on THK.[45]

The filing of NSK's counterclaim motion at this juncture of the litigation when virtually all of the key facts underlying the antitrust claims *were known at the time that the patent infringement suit was filed* suggests that the filing of the motion is for dilatory purposes. This suggestion is buttressed by NSK's antitrust-complaint-filing odyssey begun in this Court on June 4, 1993.

On June 4, 1993, NSK filed *a five-count complaint* [46] against THK, THK Japan, and Mr. Hiroshi Teramachi, the founder and president of both corporate defendants, essentially charging the same with monopolization and attempts to monopolize the linear guide market in the United States in violation of § 2 of the Sherman Act.[47] Among the allegations of the complaint was the charge that THK's monopoly power had been achieved and maintained, not through lawful conduct or through lawful use of patent monopolies, but through defendants' unlawful efforts to fix prices for linear guides and to divide markets; deceptive, false, and unfair trade practices; disparagement of NSK products and services; tortious interference with NSK's business relations and expectations; misuse of patents; accumulation of blocking patents; sham predatory patent litigation; and threats of litigation to coerce defendants' price-fixing and market division schemes and to foreclose competitors from the market. According to the allegations, all of the complained of antitrust conduct occurred *"[f]rom at least as early as January 1988, until the commencement" of the present patent infringement suit on October 17, 1990.* On July 19, 1993, before issue was joined, NSK voluntarily dismissed its antitrust complaint.[48] By *Minute Order* dated July 22, 1993, the action was "dismissed without prejudice".[49]

On August 5, 1993, in the United States District Court for the Western District of Louisiana (Shreveport, Louisiana), NSK filed *a two-count complaint* against THK America, THK Japan, and Mr. Hiroshi Teramachi,

---

**42.** *See, e.g.,* the Magistrate Judge's September 17, 1991 *Order* limiting Document Request No. 2 of NSK's *First Set Of Requests (1–5) To Plaintiff THK America, Inc. For Production Of Documents* to the patents at issue. Due to NSK's propensity for re-litigating matters already ruled upon, the September 17th *Order* had to be re-affirmed by the Magistrate Judge's October 19, 1993 *Order.*

**43.** *See Fort Howard,* 901 F.2d at 1380.

**44.** *Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1233 (Fed.Cir.1985); *Smith Int'l., Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed.Cir.), *cert. denied* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983).

**45.** *See Richardson v. Suzuki Motor Co., Ltd.,* 868 F.2d 1226, 1247 (Fed.Cir.) (harm to patentee increases as patent nears expiration), *cert. denied* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989).

**46.** Case No. 93 C 3352 (Judge Kocoras).

**47.** 15 U.S.C. § 2.

**48.** *See, "Notice Of Dismissal Pursuant To Fed. R.Civ.P. 41(a)(1)(i)"* (filed July 19, 1993).

**49.** *See,* July 22, 1993 *Minute Order,* Case No. 93 C 3352 (N.D.Ill. Judge Kocoras).

charging them with unlawful restraint of trade by illegally fixing the prices of linear guides through threats of patent litigation and the actual commencement of same.[50] More specifically, the antitrust complaint charged that beginning as early as January of 1988, Mr. Teramachi repeatedly proposed to THK's competitors in the linear guide market, including NSK, that they cooperate with THK in raising prices world-wide, including in the United States. The complaint charged further that Mr. Teramachi and THK used THK's patents as an integral part of their illegal price-fixing scheme. Injunctive and declaratory relief, as well as money damages, were sought.

The above-recited antitrust filing saga reflects the expensive extremes to which NSK is prone. It also reflects NSK's litigious nature and its propensity for delay. Rather than press its antitrust claims in the forum originally selected, NSK chose to delay resolution of its antitrust claims until its antitrust action could be re-filed in another more favorable forum.[51] Its litigation strategy in this regard was all for naught—for the United States District Court for the Western District of Louisiana transferred the antitrust action back to the Northern District of Illinois. However, time did pass. The transferred action bears Case No. 93 C 7032, and has been assigned to The Honorable Milton I. Shadur.

According to NSK, its top management received a January 21, 1988 letter from Mr. Teramachi threatening them with patent litigation if they did not agree to the price-fixing proposals set forth therein.[52] Allegedly, in April of 1988, Mr. Teramachi again sent NSK a letter proposing the same price-fixing scheme.[53] Additionally, from May 6, 1988

through June 26, 1990, Mr. Teramachi and other THK representatives met with NSK Japan's management on at least eight occasions.[54] At every meeting he attended—and he attended seven of the eight meetings— Mr. Teramachi demanded price-fixing and threatened NSK with patent infringement litigation if NSK did not cooperate.[55]

NSK's delay in seeking leave of court to file its proposed antitrust counterclaims remains unexplained—as perforce it must, given that NSK must be deemed to have knowledge of THK price-fixing correspondence admittedly received by NSK and of verbal price-fixing threats made at eight THK–NSK meetings admittedly attended by NSK top management. The facts simply do not permit absolving explanation.

*In any event, to summarize,* the factors weighing against the granting of NSK's motion—the likelihood of dismissal of the counterclaims, NSK's unexplained delay in pursuing its claims, the likelihood of prejudice to THK, and the considerable expansion of the scope of the litigation far outweigh the policy favoring free amendment of pleadings. *Based on these factors, the Court denies NSK's motion to amend its answer to add counterclaims and a new defense.*

### C. NSK's Motion to Add THK Japan and Hiroshi Teramachi as Counterclaim Defendants.

Having ruled that NSK may not amend its pleadings to assert counterclaims, there is no basis for adding THK Japan and Mr. Teramachi as counterclaim defendants. *This portion of NSK's motion is therefore denied.*

**50.** *NSK Ltd. and NSK Corporation v. THK Co., Ltd., THK America, Inc., and Hiroshi Termachi,* Civil Action No. 93–1312 "S" (W.D.La. Judge Walter) (filed August 5, 1993).

**51.** The Western District of Louisiana had absolutely "no connection whatsoever to th[e] [antitrust] dispute." *Report and Recommendation,* at 3, Civil Action No. 93–1312 (October 18, 1993) (Magistrate Judge Payne). The primary motivation for selecting that forum was the favorable case law of the Fifth Circuit Court of Appeals. *Id.*

**52.** *Complaint,* ¶¶ 7 and 8 (Civil Action No. 93–1312 "S").

**53.** *Id.*

**54.** "*Memorandum In Support Of Plaintiff's Motion For (1) Summary Judgment Of Attempted Price–Fixing And Patent Misuse; And (2) Injunctive Relief,*" at 4 (filed August 27, 1993), Civil Action No. 93–1312 "S".

**55.** *Id.*

Accordingly, it is adjudged, decreed, and ordered as follows:

"*Defendants' Motion For Leave To File Amended Answers; To Join THK Co., Ltd. As a Party Plaintiff; And To Add Counterclaims*" is denied.[56]

So Ordered.

---

56. Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, the parties are given ten (10) days after being served with a copy of this order to file objections thereto with the Honorable Charles R. Norgle, Sr. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's Order. *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986). *See also Provident Bank v. Manor Steel Corp.,* 882 F.2d 258, 261 (7th Cir.1989) (when a matter has been referred to a Magistrate Judge acting as a special master or § 636(b)(2) jurist, a party waives his right to appeal if he has not first preserved the issues for appeal by presenting them to the District Judge as objections).