**HARTFORD LIFE INSURANCE COMPANY, Plaintiff,**

v.

**VARIABLE ANNUITY LIFE INSURANCE COMPANY, INC., Defendant.**

**No. 3:95 CV 2658(AHN).**

United States District Court, D. Connecticut.

March 21, 1997.

NEVAS, District Judge.

After review, the Magistrate Judge's recommended ruling is APPROVED, ADOPTED and RATIFIED.

*RECOMMENDED RULING ON THE PLAINTIFF'S MOTION TO DISMISS THE DEFENDANT'S COUNTER-CLAIMS*

MARTINEZ, United States Magistrate Judge.

This case is a battle between insurance companies over the use of a trademark. The plaintiff Hartford Life Insurance Company alleges that its registered mark *THE DIRECTOR,* which it uses to market tax-deferred life insurance annuity contracts, has been infringed by the mark *PORTFOLIO DIRECTOR* which the defendant Variable Annuity Life Insurance Company ("VALIC") uses to sell similar insurance annuity contracts. VALIC has counterclaimed asserting that Hartford has instituted this litigation only to compete unfairly and interfere with VALIC's financial expectancies.

Hartford has moved to dismiss the counterclaims pursuant to Fed.R.Civ.P. 12(b)(6), arguing it is immune from suit under the Noerr–Pennington doctrine. The Noerr–Pennington doctrine protects a litigant's First Amendment right to seek judicial redress of grievances by immunizing the litigant from a claim that the mere act of pursuing a lawsuit causes harm. VALIC responds that its counterclaims fall within the "sham" exception to Noerr–Pennington immunity.

For the reasons set forth below, the court concludes that VALIC has failed to allege facts which, if proved, could establish that Hartford's case is a sham. The court recommends that the motion to dismiss the counterclaims be GRANTED because Hartford is immune from such claims under the Noerr–Pennington doctrine.

I. *LEGAL STANDARD*

When considering a motion to dismiss a counterclaim, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in the light most favorable to the defendant. *E.g., Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993), *cert. denied,* 513 U.S. 1014, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994). Dismissal is not warranted "unless it appears beyond doubt that the [defendant] can prove no set of facts in support of the [counterclaim] which would entitle him to relief." *Utica Mutual Ins. Co. v. Denwat Corp.,* 778 F.Supp. 592, 593 (D.Conn.1991); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

II. *BACKGROUND*

Hartford complains of trademark infringement based on the following allegations. Hartford began using the mark *DIRECTOR* in connection with the marketing and sale of its tax-deferred insurance annuities in 1985. (Complaint ¶ 7.) The U.S. Patent and Trademark Office registered the *DIRECTOR* mark in 1990. (Complaint ¶ 9.) Hartford enjoyed enormous sales of insurance annuity contracts by use of the mark and has expended large sums of money in

promoting and advertising those products. (Complaint ¶ 10.)

Long after Hartford began using its mark, VALIC adopted the mark *PORTFOLIO DIRECTOR* in association with its sale of tax deferred insurance annuity products and with full knowledge of Hartford's prior and confusingly similar use. (Complaint ¶¶ 14–15.) On December 13, 1995, Hartford filed suit against VALIC claiming that Hartford's *DIRECTOR* mark had been infringed by VALIC's later use of the mark *PORTFOLIO DIRECTOR.*

In its answer to Hartford's complaint, VALIC asserted a number of special defenses including laches, estoppel and waiver. At the same time as VALIC filed its answer to Hartford's complaint, VALIC filed counterclaims. The facts alleged in the counterclaims, which the court accepts as true for purposes of this motion, follow.

VALIC filed an application for registration of the trademark *PORTFOLIO DIRECTOR* on December 9, 1993. (Counterclaim ¶ 4.) Pending registration, VALIC's mark was published as required. (Counterclaim ¶ 5.) At no time during the pendency of the application did Hartford object to the application. (Counterclaim ¶ 6.) The U.S. Patent and Trademark Office issued a registration for *PORTFOLIO DIRECTOR* issued on August 15, 1995. (Counterclaim ¶ 7.)

VALIC has marketed annuities under its mark since February 14, 1994 and has sold them since July 11, 1994. (Counterclaim ¶ 15.) The products sold by VALIC in connection with its *PORTFOLIO DIRECTOR* mark are different than those sold by Hartford and are marketed to different customers. (Counterclaim ¶ 10.) There is no likelihood of confusion between the marks of Hartford and VALIC, nor has there been any actual confusion between the marks. (Counterclaim ¶¶ 11–12.) Hartford instituted this lawsuit knowing of this lack of confusion. (Counterclaim ¶ 17.)

VALIC has made a significant investment in promoting and advertising its product under the mark *PORTFOLIO DIRECTOR.* (Counterclaim ¶ 15.) The mark is distinctive and well known and represents the source and origin of VALIC's product. (Counterclaim ¶ 16.) There exist a number of other financial products and investment services which use the word "director" but Hartford has never objected to them. (Counterclaim ¶¶ 13–14.) By virtue of Hartford's action against VALIC, VALIC has suffered irreparable harm and damages. (Counterclaim ¶¶ 20–21.)

### III. *DISCUSSION*

Hartford argues that the filing of its trademark infringement and unfair trade practices complaint in this case is fully protected by the First Amendment right of access to the courts and, under the Noerr–Pennington doctrine, is immune from counterclaims which allege economic injury resulting from the mere prosecution of this lawsuit. VALIC maintains that by alleging facts which, if proved, show that Hartford's claims are barred by the doctrines of laches, estoppel and waiver, VALIC has adequately pled that Hartford's lawsuit is nothing more than a sham which is exempt from Noerr–Pennington immunity.

The Noerr–Pennington doctrine was established by the Supreme Court in a trilogy of antitrust cases, *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), *United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The doctrine is derived from First Amendment principles guaranteeing the right to petition the government. *California Motor Transp. Co.,* 404 U.S. at 510–511, 92 S.Ct. at 611–612. To protect this fundamental right, Noerr–Pennington immunizes legislative, executive and judicial activity from antitrust liability even if the activity is designed to eliminate competition. *Id.*

The courts recognize a limited exception to Noerr–Pennington immunity known as the "sham" exception. *Professional Real Estate Investors v. Columbia Pictures Indus.,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Under the sham exception, litigation may be deprived of immunity if it constitutes

"a mere sham to cover ... an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533.

In *Professional Real Estate Investors,* the Supreme Court outlined a two-part test for determining when litigation will be considered a sham not immunized under *Noerr.* First the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,* and an antitrust claim premised on the sham exception must fail." *Id.* at 60, 113 S.Ct. at 1928. If the court concludes that the challenged litigation is objectively meritless, then the court must next consider the second prong of the test. *Id.* at 60–61, 113 S.Ct. at 1928–1929.

The second prong involves an inquiry into the litigant's subjective motivation. An improper purpose will be found if the court determines that "the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor,' through the 'use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.' *Id.* (quoting *Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 380, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (1991), and adding emphasis).

Because the question of subjective intent is not considered unless a claim is first held to be objectively baseless, a finding that a lawsuit was instituted with probable cause is an absolute defense to a claim that the case is a sham regardless of litigant's subjective motivation. *Id.* Probable cause to institute civil proceedings requires no more than a " 'reasonabl[e] belie[f] there is a chance that [a] claim may be held valid upon adjudication.' " *Id.* at 62–63, 113 S.Ct. at 1929 (citations omitted). Where there is no dispute over the predicate acts of the underlying proceedings, the court may determine probable cause as a matter of law. *Id.* at 63, 113 S.Ct. at 1929–1930.

A winning lawsuit is, by definition, not a sham. *Id.* at 61, n. 5, 113 S.Ct. at 1928, n. 5. A losing lawsuit, on the other hand, must not lead the reviewing court to "engage in post hoc reasoning by concluding that an ultimately unsuccessful 'action must have been unreasonable or without foundation.' " *Id.* (citations omitted). Even if a lawsuit is ultimately lost, probable cause to pursue the action will exist if it "was arguably 'warranted by existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification, or reversal of existing law.' " *Id.* at 65, 113 S.Ct. at 1930–1931 (quoting Fed.R.Civ.P. 11).

In support of its motion to dismiss, Hartford argues that VALIC has failed to plead facts which show the lawsuit is objectively baseless. All VALIC has done, argues Hartford, is to restate as counterclaims VALIC's equitable defenses to the underlying litigation. Hartford maintains that probable cause to bring this litigation is established by the statutory presumptions of validity, ownership and exclusive rights that attach to its registered trademark *DIRECTOR* under 15 U.S.C. § 1115, as well as a visual inspection of the parties' marks and their respective goods and services. *See Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.,* 815 F.2d 500, 504 (8th Cir.1987) (noting that courts rely to a fair degree on visual inspection of the parties' marks when rendering decisions in trademark infringement actions). Assuming that probable cause is thus established, Hartford urges the court to further conclude that allegations supporting the defenses of laches, estoppel and waiver are incapable of undermining probable cause.

In opposition to the motion to dismiss, VALIC asserts in a conclusory fashion that Hartford cannot establish that it had probable cause to bring this case. To support its assertion that Hartford's claims are objectively baseless, VALIC relies solely upon the counterclaim allegations which support the assertion that Hartford's trademark is unenforceable under the equitable doctrines of laches, estoppel and waiver.[1]

---

1. VALIC does not assert any defenses to Hartford's claims which previously have been held to establish objective baselessness. For instance, VALIC does not deny that Hartford is the owner

Stripped of everything but its essentials, VALIC's argument is that because its defenses ultimately will prevail, Hartford's lawsuit must be "objectively baseless" within the meaning of the sham exception. VALIC's argument is unpersuasive. Even if VALIC is correct in its assertion that it will win this lawsuit,[2] it is incorrect in then concluding that Hartford's claims must have been brought with no probable cause to support them. As the Supreme Court pointed out in *Professional Real Estate Investors,* the fact that one loses a lawsuit does not mean that there was no probable cause to initiate the lawsuit at the outset. *Professional Real Estate Investors,* 508 U.S. at 61 n. 5, 113 S.Ct. at 1928 n. 5. Put another way, even when reading the counterclaim allegations as true, the court is left with nothing from which it can infer that Hartford's claims were not even arguably warranted by existing law when Hartford commenced the underlying litigation. *Id.; see also THK America, Inc. v. NSK Ltd.,* 157 F.R.D. 660, 662–63 (N.D.Ill. 1994).

VALIC thus failed to allege facts which, when proven, show that Hartford's trademark claims are objectively baseless. Having failed to surmount the requirements of the first prong of the sham exception, the court need not address the second prong of the sham exception. *Id.* at 59–61, 113 S.Ct. at 1928. VALIC's counterclaims should be dismissed as barred by the Noerr–Pennington doctrine.

## IV. CONCLUSION

For the forgoing reasons, the Court recommends that the plaintiff's motion to dismiss the defendant's counterclaims (Doc. # 12–2) be GRANTED.

Either party may seek the district judge's review of this recommendation. *See* 28 U.S.C. § 636(b) (**written objections to ruling must be filed within ten days after service of same**); F.R. Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 474–475, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992) (**failure to file timely objection to Magistrate Judge's recommended ruling waives any further judicial review of the ruling**).

Dated at New Haven, Connecticut this 11th day of March, 1997.

---

of the registered mark *DIRECTOR* which predates VALIC's registration of the mark *PORTFOLIO DIRECTOR* nor does VALIC allege that Hartford procured its registration through any type of fraud. *See Novo Nordisk v. Genentech, Inc.,* 885 F.Supp. 522, 526–27 (S.D.N.Y.1995) (citing *Walker Process Equip., Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 174, 86 S.Ct. 347, 348–349, 15 L.Ed.2d 247 (1965), court suggests Noerr–Pennington immunity may not apply where patentee sues to enforce patent knowing patent was procured by fraud).

**2.** Hartford argues that even when the facts underlying VALIC's counterclaims are accepted as true, VALIC's counterclaims will not amount to a complete defense of the claims against it.