BRISTOL–MYERS SQUIBB
CO., Plaintiff,

v.

COPLEY PHARMACEUTICAL,
INC., Defendant.

No. Civ.A. 99–12434–JLT.

United States District Court,
D. Massachusetts.

Dec. 29, 2000.

Thomas J. Sartory, Goulston & Storrs, Boston, MA, Robert L. Baechtold, Joseph M. O'Malley, Jr., Fitzpatrick, Cella, Harper & Scinto, New York City, for Bristol–Myers Squibb Company, Plaintiff.

Daniel J. Gleason, Carl M. DeFranco, Jr., Nutter, McClennen & Fish, Boston,

MA, for Copley Pharmaceutical, Inc., Defendant.

Daniel J. Gleason, Carl M. DeFranco, Jr., Nutter, McClennen & Fish, Boston, MA, for Copley Pharmaceutical, Inc., Counter–Claimant.

Thomas J. Sartory, Goulston & Storrs, Boston, MA, for Bristol–Myers Squibb Company, Counter–Defendant.

## MEMORANDUM

TAURO, District Judge.

### BACKGROUND

Plaintiff Bristol–Myers Squibb Co. ("Bristol"), a pharmaceuticals manufacturer, owns and received FDA approval for the "732 Patent," a patent for the stable flocculated suspension of megestrol acetate in water. In October 1999, Defendant Copley Pharmaceuticals, Inc. ("Copley"), a generic-drug manufacturer, filed with the FDA an Abbreviated New Drug Application ("ANDA") for approval of a generic version of megestrol acetate oral suspension. The application included a certification that the generic version would not infringe the 732 Patent.

Bristol sued Copley in November 1999, seeking a declaratory judgment that Copley's certification is deficient; a declaratory judgment that Copley is infringing the 732 Patent; a permanent injunction enjoining Copley from manufacturing or selling megestrol acetate oral suspension in the United States; and a court order stating that the effective approval date for any ANDA is not earlier than August 16, 2011, the 732 Patent expiration date.

Copley answered and filed seven counterclaims. The first three counterclaims seek a declaratory judgment that Copley has not infringed the 732 Patent, that the 732 Patent is invalid; and that the 732 Patent is unenforceable. Copley's four remaining counterclaims ask the court to enjoin the litigation and order damages based on Bristol's frivolous litigation intended only to maintain an unlawful monopoly, to attempt to monopolize the market, to unfairly compete with Copley, and to tortiously interfere with Copley's prospective economic advantage.

### DISCUSSION

■ Bristol moves pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss Copley's last four counterclaims for failure to state a claim. Bristol argues that Copley lacks standing because it fails to show a causal link to the alleged harm, i.e. that by bringing this allegedly baseless lawsuit, Bristol has prevented Copley from entering the generic-drug market.

■ A private plaintiff has standing to bring an antitrust action if: (1) the plaintiff's business or property has been injured; (2) the defendant's conduct was the substantial cause of the injury; and (3) the injury is of the type the antitrust laws were intended to prevent. *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Establishing "antitrust injury" is essential to standing. *See e.g. Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990).

Under the Hatch–Waxman Act ("the Act"), once a new drug receives FDA approval, a company seeking to manufacture a generic version of the same drug must submit an Abbreviated New Drug Application ("ANDA"), stating that an extensive list of criteria will be met by the generic drug and its marketing. *See* 21 U.S.C. § 355(j)(2)(B). One of these criteria is a certification that the existing patent "is invalid or will not be infringed by the manufacture, use, or sale of the new drug

for which the application is submitted." 21 U.S.C. § 355(j)(2)(A)(vii)(IV).

When an applicant submits its ANDA and certification, the patent owner has 45 days to bring a patent-infringement suit against the ANDA applicant. Once suit is brought, the Act prohibits final approval of the ANDA for 30 months, unless the patent is declared invalid. *See* 21 U.S.C. § 355(j)(5)(B)(iii). During this 30–month period, however, the FDA may tentatively approve the ANDA. *See* 21 C.F.R. § 314.105(a).

Additionally, the Act provides a significant incentive to generic-drug manufacturers who file the first ANDA. The Act grants the first filer a 180–day period of market exclusivity before subsequent ANDA filers can enter the market. *See* 21 U.S.C. § 355(j)(5)(B)(iv). The 180 days begins to run when the first filer commercially markets the generic drug or a court declares the existing patent invalid. *See id.* Thus, a first filer involved in infringement litigation does not lose the 180 day market-exclusivity period.

Bristol contends that Copley lacks standing because the statutory scheme, not its lawsuit, prevents Copley from entering the market. Bristol first argues that Copley has not received tentative FDA approval of its ANDA. Copley counters that it cannot receive approval because Bristol's lawsuit suspends the FDA approval process until the litigation ends or until Bristol's patent is declared invalid.

Copley is incorrect. Once the ANDA is filed, the FDA will review the application within 180 days and state whether it is approvable. *See* 21 U.S.C. § 355(j)(5)(A); 21 C.F.R. § 314.100. Copley may receive tentative approval of the ANDA, with only final approval delayed by the litigation. *See* 21 C.F.R. §§ 314.105(d), 314.107. Without tentative FDA approval, Copley

could not now enter the market, regardless of the pending litigation.

Bristol next argues that even if Copley received tentative FDA approval, it still could not enter the market because Par Pharmaceutical, Inc. ("Par") filed the first ANDA, and is entitled to 180 days of market exclusivity. Copley responds by noting that Bristol filed a similar patent-infringement lawsuit against Par, which if successful, would invalidate Par's ANDA, making Copley the first filer.

As a second filer, Copley is prohibited from entering the market until Par's 180 day market-exclusivity period runs. *See* 21 U.S.C. § 355(j)(5)(B)(iv). Bristol's litigation suspends Par's entry into the market for 30 months or until Bristol's patent is declared invalid. *See* 21 U.S.C. § 355(j)(5)(B)(iii). At this time, Par is the declared first filer of a valid ANDA, and is therefore entitled to 180 days of market exclusivity, a period that has not yet begun to run. Copley's speculative argument that Bristol may successfully invalidate Par's ANDA is just that—speculation, which is insufficient to confer standing. *See City of Pittsburgh v. West Penn Power Comp.*, 147 F.3d 256, 268 (3rd Cir.1998) (noting that a speculative injury is not antitrust injury).

 Finally, Copley claims that the mere fact that it must defend against this allegedly baseless suit is sufficient antitrust injury to confer standing. Courts are in conflict over whether defense costs constitute antitrust injury.

Copley directs this court to *D.A. Rickards, M.A. v. Canine Eye Registration Found.*, 783 F.2d 1329 (9th Cir.1986), a case involving a group of veterinarians who sued an organization specializing in hereditary canine eye disease. Only dogs examined by certified veterinarians were listed in the organization's registry. Plaintiffs were not certified, and sued the defen-

dant organization, claiming that the organization's actions violated §§ 1 and 2 of the Sherman Act, 15 U.S.C. § § 1, 2 (2000). The organization counterclaimed that the plaintiffs filed a vexatious complaint to interfere with the organization's business relations. The sole harm asserted by the organization was the cost of defending against the lawsuit. *See Rickards*, 783 F.2d at 1334. With reservation, the Ninth Circuit followed prior circuit law to hold that costs of litigating a frivolous lawsuit are cognizable under antitrust laws. *See id.* at 1334–35.

Bristol argues that *Rickards* is inapplicable and that this court instead should follow more recent cases from the U.S. District Court for the District of Columbia and the Third Circuit. Bristol first cites this court to *Andrx Pharmaceuticals, Inc. v. Friedman*, 83 F.Supp.2d 179 (D.D.C. 2000). In *Andrx*, Biovail Corporation, a subsequent ANDA filer, counterclaimed against HMRI, the patentee, and Andrx, the first ANDA filer, alleging that the two colluded to delay Andrx's 180 day market-exclusivity period. Biovail averred that their collusion effectively prevented it from entering the generic-drug market. *See id.* at 184. Biovail alleged as its harm "unnecessary and artificial costs and delay in sales due to Andrx's interference with Biovail's rights." *Id.* at 183.

The district court dismissed Biovail's counterclaim for lack of standing. *See id.* at 184. The court held that because the FDA had not tentatively approved Biovail's ANDA and because Andrx was the first filer, entitled to 180 days of market exclusivity, Biovail could not show a causal connection between the alleged collusion and Biovail's inability to enter the market. *See id.*

The Third Circuit similarly addressed the issue in the utilities industry context. *See City of Pittsburgh v. West Penn Power Comp.*, 147 F.3d 256 (3rd Cir.1998). In *West Penn*, the City brought an antitrust suit against two utility companies, Duquesne Light Co. ("Duquesne") and Allegheny Power ("Allegheny"). State regulations required utility companies to seek certification from the state utilities commission before providing retail utility service. Duquesne was certified and served as the sole utilities provider for the City's redevelopment zones.

To make the zones more attractive for economic development, the City sought to increase utility competition, and asked Allegheny to apply for certification. Allegheny complied. Before approval, however, Allegheny decided to merge with Duquesne, and withdrew its certification application. The City sued on the ground that the proposed merger would lessen competition.

The Third Circuit affirmed the district court's dismissal of the case for lack of standing, holding that the City failed to show a causal connection between the merger and any decrease in competition. *See id.* at 268. The court noted that for the City to show the harm of decreased competition, Allegheny must have received certification. Because Allegheny withdrew its application, the company's future ability to compete in the market was pure speculation. The presence of the regulatory scheme and the need for approval, which Allegheny did not receive, "cut the causal chain and convert[ed] what might have been deemed antitrust injury in a free market into only a speculative exercise." *Id.* The court further noted that "a plaintiff cannot be injured in fact by private conduct excluding him from the market when the statute prevents him from entering that market in any event." *Id.*

*Andrx* and *West Penn* are more persuasive than *Rickards*. Like the defendant in both cases, Copley has not received the

tentative regulatory approval required for market entry. Copley also is not the first filer, and cannot enter the market until Par's 180 market-exclusivity period expires. Thus the statutory scheme, not Bristol's lawsuit, prevents Copley from entering the market.

Moreover, just as in *Andrx,* Copley's argument that its costs alone are sufficient antitrust injury is without merit. First, unlike *Rickards, Andrx* is factually on point. In the pharmaceutical patent context, the district court in *Andrx* specifically rejected the argument Copley now makes. *See Andrx,* 83 F.Supp.2d at 184. Second, even if *Rickards* applied, Copley still lacks standing because it fails to allege in its complaint that it is harmed by the costs associated with defending against this litigation. *See Novo Nordisk of No. Am. v. Genentech, Inc.,* 885 F.Supp. 522 (S.D.N.Y.1995) (applying *Rickards* where "the complaint alleges as antitrust injury the costs incurred in connection with defending a litigation"). Because Copley has not received tentative FDA approval and because Par's 180–day period of market exclusivity has not run, Copley cannot show that Bristol's lawsuit is preventing it from entering the market, and therefore, it fails to show antitrust injury.

### *CONCLUSION*

Accordingly, Bristol's Motion to Dismiss Copley's counterclaims for lack of standing is ALLOWED, without prejudice to Copley's renewal after: (1) the FDA tentatively approves its ANDA; *and* (2)(a) Par's 180 day market-exclusivity period has run, or (b)(i) Par's ANDA is invalidated, and (ii) Copley is declared the first filer.

IT IS SO ORDERED.